# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**KATHLEEN A. SERWATKA,**
        **Plaintiff,**

    v.                                                      Case No. 06C1012

**ROCKWELL AUTOMATION, INC.,**
        **Defendant.**

---

## DECISION AND ORDER

Plaintiff Kathleen A. Serwatka, a former employee of defendant Rockwell Automation, Inc. ("Rockwell") brings this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., alleging that defendant discriminated against her by discharging her because it regarded her as being disabled. Defendant now moves for summary judgment.

## I. FACTS

Plaintiff worked for defendant between 1988 and 2004, when defendant terminated her. Plaintiff primarily assembled the 1388 and 1395 product lines. In 1998, plaintiff's doctor imposed several work restrictions, including requirements that plaintiff perform sedentary work and lift no more than ten pounds. In 1999, plaintiff's doctor lifted the requirement that she perform sedentary work and authorized her to lift up to twenty pounds. Plaintiff states that in 1999 and again in 2002, she provided defendant with a doctor's report to this effect. However, defendant states that plaintiff did not provide this information to it until March 2004.

During plaintiff's tenure, demand for the 1388 and 1395 product lines steadily declined. Defendant states that it became concerned that these lines would not generate enough work to keep plaintiff busy and that it unsuccessfully attempted to locate other work for her that was consistent with her restrictions. In March 2004, plaintiff complained that she did not have enough work and identified another job in the company that she believed she could perform. Her supervisor, Mark Scott, indicated that she could not do this job because it required her to lift more than ten pounds. Plaintiff told Scott that her restriction was twenty pounds and produced a copy of the 1999 letter so indicating. However, defendant declined to honor the 1999 letter and told plaintiff that it would continue to honor the 1998 restrictions until she produced additional information from her physician. In early April 2004, plaintiff produced a letter from her doctor stating that she could lift up to twenty pounds. However, for reasons that are unclear, defendant did not give plaintiff the job she requested.

In 2004, defendant performed an internal analysis of positions that plaintiff could potentially fill. Defendant did not inform plaintiff of such analysis or involve her in it. On June 16, 2004, defendant discharged plaintiff, stating that the 1388 and 1395 product lines would generate insufficient work to support her position and that no alternative work consistent with her restrictions was available. About a week later, plaintiff provided defendant with a physician's report reiterating that she was not subject to a sedentary restriction and could lift up to twenty pounds. In response to defendant's questions, plaintiff indicated that the doctor had not recently examined her. Defendant refused to honor the restrictions in the report.

I will state additional facts in the course of the decision.

2

## II. APPLICABLE LAW

**A.    Summary Judgment Standard**

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating a motion for summary judgment, I draw all inferences in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**B.    Relevant ADA Law**

The ADA prohibits an employer from discriminating against "a qualified individual with a disability" in connection with employment. 42 U.S.C. § 12112(a).[1] "Disability" means: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). An employee is regarded as being disabled if, among other things, she has an impairment that does not substantially limit major life activities but is treated by her employer as if it did. 29 C.F.R. § 1630.2(l); Wright, 204 F.3d at 730-32. "Walking" is a "major life activity." 29 C.F.R. §§ 1630.2(i). "Substantially limited" means considerably limited or limited to a large degree as compared to an average person. 29 C.F.R. § 1630.2(j)(ii); Toyota Motor Mfg. Ky., Inc. v. Williams,

---

[1]There are two types of disability discrimination claims under the ADA: disparate treatment claims and failure to accommodate claims. Wright v. Ill. Dep't of Corrections, 204 F.3d 727, 730-32 (7th Cir. 2000). In the present case, plaintiff claims disparate treatment.

3

534 U.S. 184, 196-99 (2002); see also Dvorak v. Mostardi Platt Assocs., Inc., 289 F.3d 479, 484 (7th Cir. 2002).

**C.     Proving Discrimination**

Plaintiff can prove disability discrimination directly or via the indirect method established in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the indirect method, she must first establish a prima facie case of discrimination. To establish a prima facie case, plaintiff must show that: (1) she is disabled within the meaning of the ADA; (2) she is qualified to perform the essential functions of her job, either with or without reasonable accommodation; and (3) she has suffered from an adverse employment decision because of her disability. Dvorak, 289 F.3d at 483. If plaintiff makes this showing, the burden of production shifts to defendant to articulate a non-discriminatory reason for the discharge. Id. at 485. If defendant articulates such a reason, plaintiff must prove by a preponderance of the evidence that defendant's proffered reason was a pretext for intentional discrimination. Id.

### III.  DISCUSSION

In the present case, plaintiff contends that defendant discriminated against her by discharging her because it regarded her as being disabled, specifically because it believed that she had a physical impairment that substantially limited her ability to walk. Plaintiff attempts to establish discrimination under both the direct and indirect methods of proof. I first address her effort under the indirect method. Defendant does not dispute that plaintiff establishes that she was qualified to perform the job that she had been performing or that she was subjected to an adverse employment action. However, defendant does

4

dispute that plaintiff has presented sufficient evidence to establish that it perceived plaintiff to have an impairment that substantially limited her ability to walk. Defendant also argues that even assuming that plaintiff establishes a prima facie case, the evidence shows that it discharged her for legitimate non-discriminatory reasons. I conclude that plaintiff presents enough evidence to establish a prima facie case.

The evidence indicates that supervisors Karen Shipley and Sandeep Nuchikat, who participated in the decision to discharge plaintiff, believed her to be subject to a restriction requiring her to perform sedentary work. The evidence further indicates that Shipley and Nuchikat believed that this restriction meant that plaintiff's ability to walk was limited. At a hearing before the Wisconsin Equal Rights Division, Shipley testified:

> Q: And as of June 16, 2004, you perceived Ms. Serwatka to have the following restrictions: One, sedentary limitation, correct?
>
> A: Yes.
>
> Q: . . . you interpreted sedentary as in the course of an eight-hour day at work being something that you would not be able to walk around or move around: correct?
>
> A: I believe it was standing or walking occasionally, but primarily seated.
>
> Q: All right. Your understanding was that it was in the course of an eight-hour day at work as being something that she was not going to be able to walk or move around. It was sedentary, seating – seated position: isn't that correct?
>
> A: Correct.
>
> Q: That would be a substantial limitation on major life function, isn't that right?
>
> A: Correct.
> . . . .

5

> Q: Now even after Ms. Serwatka was terminated you believed Ms. Serwatka had a limitation with regard to walking and standing, yes?
>
> A: Sedentary was still – I believe that was in the restriction, yes.

(Pl.'s Br. in Opp'n to Def.'s Mot. for Summary J. at 5-6.) In his deposition, Nuchikat testified:

> Q: . . . did you understand that her restriction was a limitation on walking?
>
> A: Yes.
>
> Q: Okay. Did you see her walking in the plant?
>
> A: I saw her walking from her area to breaks or to meetings.
>
> Q: Did she seem to have any difficulty to you?
>
> A: Not that I noticed.
>
> Q: Okay.
>
> A: But I'm not going to question the medical restrictions that she has.
>
> Q: Why not?
>
> A: Because that's not my job. I'm not a doctor.

(Mihelich Aff. Ex. C at 79-80.) Scott testified:

> Q: Okay. And when you observed her walking, did she appear to have any difficulty walking?
>
> A: Not really, no.
>
> Q: Did she have a limp?
>
> A: She does have her own strut.
>
> Q: Was that a limp?

6

Case 2:06-cv-01012-LA   Filed 08/23/07   Page 6 of 11   Document 42

> A: I don't know if you'd call it a limp, but she does walk a little bit different.
>
> . . . .
>
> A: If I'm not mistaken, she might have fallen down one time and broke her ankle.

(Id. Ex. D at 34.)

Defendant argues that plaintiff's supervisors did not truly believe that her impairment substantially limited her ability to walk. Defendant points to Nuchikat's testimony that he observed plaintiff walking without much difficulty and to Shipley's observation that plaintiff could walk. However, the fact that Shipley and Nuchikat did not observe plaintiff having difficulty walking does not mean that they did not perceive her ability to walk to be substantially limited. Both supervisors made clear that they understood plaintiff to have a walking limitation. Nuchikat further stated that he would not question the doctor's judgment.

Defendant also argues that the fact that it employed plaintiff and attempted to find work for her indicates that it did not perceive her to be disabled. However, the fact that defendant employed plaintiff does not mean that plaintiff's supervisors did not perceive her ability to walk to be substantially limited. Plaintiff's job assembling the 1388 and 1395 product lines did not require walking. Plaintiff disputes that defendant genuinely attempted to find work for plaintiff. In any case, defendant's purported failure to find work consistent with its understanding of her work restriction arguably reinforces plaintiff's argument that defendant regarded her as being more disabled that she actually was. Further, defendant's reluctance to accept plaintiff's doctor's statements indicating that plaintiff had no sedentary restriction arguably gives rise to an inference that defendant had made up

7

its mind about the extent of plaintiff's disability and was unwilling to change course. Thus, plaintiff presents sufficient evidence to establish a prima facie case that defendant discharged her because of her perceived disability.

However, defendant proffers legitimate non-discriminatory reasons for discharging plaintiff. Defendant states that it discharged plaintiff because it believed that the 1388 and 1395 product lines would generate insufficient work to justify keeping her and that even though it sometimes found alternative jobs for long-standing employees like plaintiff whose jobs were eliminated, it was unable to find a position for plaintiff consistent with her work restrictions. Thus, in order to withstand defendant's motion for summary judgment, plaintiff must present sufficient evidence to enable a reasonable jury to conclude that defendant's proffered reasons are pretextual. I conclude that plaintiff satisfies this burden.

Plaintiff presents a number of pieces of evidence that could cause a reasonable jury to conclude that defendant's proffered reasons for discharging her are pretextual. First, the evidence regarding the dwindling of available work on the 1388 and 1395 product lines is less clear than defendant suggests. Although demand for the 1388 line continued to decline and ultimately dried up, it did not dry up until about nine months after plaintiff's discharge. More significant is the fact that in the second half of 2004 (after plaintiff was discharged), employees of defendant devoted about 211 hours to work on the 1395 line, and in 2005 employees spent approximately 366 hours on such work. After plaintiff's discharge, three employees worked on the 1395 line, and together they spent an average of slightly over four days per week on the work. Thus, work on the 1395 product line came close to supporting a full-time position for at least a year and a half after plaintiff's discharge. I note also that Nuchikat's affidavit concerning the amount of time defendant's

employees spent working on the 1395 line in the months after plaintiff was fired appears not to correspond to the numbers on the spreadsheet that he provided. He states that defendant's employees spent 135.5 hours in the second half of 2004, but my calculation, based on adding the numbers on the spreadsheet, indicates 211 hours. As for 2005, Nuchikat states that defendant's employees spent 180 hours, but my calculations indicate 366 hours. Further, some of the employees that defendant employed on the 1395 line, such as Elrene Krause, likely could have been usefully employed by defendant on other work. These facts cast doubt on whether defendant honestly believed that dwindling demand for the 1395 product line required it to discharge plaintiff in June 2004. Also, Nuchikat's apparent misstatements are somewhat disconcerting.

The record also contains evidence that calls into question the sincerity of defendant's contention that it could not find alternative work for plaintiff. First, there is a factual dispute as to when defendant became aware that plaintiff was not subject to a sedentary work restriction. Although defendant indicates that it did not receive this information until spring of 2004, plaintiff states that she provided it to defendant in 1999 and again in 2002. At the summary judgment phase, I must resolve this dispute in plaintiff's favor. Further, even assuming that defendant did not receive the information until 2004, its handling of the information raises questions about whether it had already decided to terminate plaintiff. It is unclear why defendant refused to honor the 1999 restrictions, why it insisted on further clarification and why it declined, based apparently on no longer operative restrictions, plaintiff's request to work at a job that she believed she could do. Defendant's refusal to honor the report plaintiff provided shortly after her discharge and its

9

consistent failure to discuss plaintiff's condition with plaintiff's physician or its own physician and its failure to conduct its own examination of plaintiff raise additional doubts.

Further, the evidence raises questions about the internal analysis defendant conducted regarding possible work available to plaintiff. First, the fact that defendant never informed plaintiff that it was conducting such an analysis and never sought to involve her in it raises some doubt about its purpose and its thoroughness. It is also odd that Ron Iwinski, who worked on the report, concluded that plaintiff's medical restrictions precluded her from any manufacturing associate level C position, even though she had served in such a position for many years. Defendant's internal e-mails commencing in January 2004, before the internal analysis was conducted referring to the likelihood that plaintiff would not remain with the company and the need to document the unavailability of alternative positions available to her (presumably for purposes of litigation), also could give rise to inferences unfavorable to defendant's contention as to its reason for discharging plaintiff. Thus, plaintiff presents sufficient evidence to enable a reasonable jury to conclude that defendant's proffered reasons for discharging her are pretextual.[2]

Ultimately, I conclude that the case requires resolution by a jury.

## IV. CONCLUSION

Therefore, for the reasons stated,

**IT IS ORDERED** that defendant's motion for summary judgment is **DENIED**.

---

[2]Thus, I need not address plaintiff's effort to prove discrimination under the direct method of proof.

10

**IT IS FURTHER ORDERED** that the case is set for a telephonic status conference on **September 13, 2007 at 2:30 p.m.** The court will initiate the call

Dated at Milwaukee, Wisconsin, this 22 day of August, 2007

/s_____
LYNN ADELMAN
District Judge

11