# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**KATHLEEN A. SERWATKA,**
        **Plaintiff,**

    **v.**                                **Case No. 06C1012**

**ROCKWELL AUTOMATION, INC.,**
        **Defendant.**

---

## DECISION AND ORDER

Plaintiff Kathleen A. Serwatka, a former employee of defendant Rockwell Automation, Inc., brought this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., alleging that defendant discriminated against her by discharging her because it regarded her as being disabled. After a four-day trial, a jury found that defendant had mixed motives for discharging plaintiff; it fired her because it perceived her to be disabled but would have done so apart from such perception. In cases where juries find that defendants acted adversely towards employees for mixed motives, plaintiffs are not entitled to damages. <u>See</u> 42 U.S.C. § 2000e-5(g)(2)(B)(ii) (barring courts from awarding damages to plaintiffs in cases where factfinder concludes that defendant would have taken the same adverse employment action in the absence of impermissible discrimination); 42 U.S.C. § 12117(a) (incorporating the powers, remedies, and procedures of § 2000e-5 into the ADA). Thus, plaintiff received no damages. Plaintiff now asks me to declare that defendant violated the ADA, order it to place the declaration in plaintiff's personnel file and award her attorneys' fees and costs.

Under 42 U.S.C. § 2000e-5(g)(2)(B)(i), a provision of Title VII of the Civil Rights Act of 1964, a court may award declaratory relief, injunctive relief, and attorneys' fees and costs to a plaintiff in an employment discrimination case who proves unlawful discrimination but who cannot recover damages because the defendant would have taken the same adverse employment action for a non-discriminatory reason.  Further, under 42 U.S.C. § 12117(a), a court in a disability discrimination in employment case may avail itself of the remedies provided in § 2000e-5(g)(2)(B)(i).  Plaintiff's requests for declaratory and injunctive relief are reasonable to the extent that they seek to ensure that the judgment and plaintiff's personnel file accurately reflect the outcome of the case.  See, e.g., Miller v. Pilgrim's Pride Corp., Case No. 5:05CV00064, 2007 WL 2570219, at *4-5 (W.D. Va. Aug. 31, 2007).  Thus, I will enter a judgment that reflects the jury's verdict and order defendant to place a copy of the judgment in plaintiff's personnel file.

With respect to plaintiffs' request for attorneys' fees, I must first determine whether I may award fees in mixed-motive disability discrimination cases.  Plaintiff argues that § 12117(a) of the ADA authorizes me to do so.  However, defendant contends that § 12205 of the ADA, the statute's general attorneys' fees provision, governs and that it does not authorize a fee award because plaintiff is not a "prevailing party."[1]  Section § 12117(a) provides that:  "The powers, remedies and procedures set forth in section [ ] . . . 2000e-5 . . . shall be the powers, remedies and procedures this subchapter provides to . . . any

---

[1]A prevailing party is one who has obtained relief as the result of a judgment or consent decree. Petersen v. Gibson, 372 F.3d 862, 865 (7th Cir. 2004).  To entitle a plaintiff to fees, the relief received must be real, i.e., it must materially alter the legal relationship between the parties.  Farrar v. Hobby, 506 U.S. 103,110-12 (1992).  "A technical victory may be so insignificant…as to be insufficient to support prevailing party status." Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989).

person alleging discrimination on the basis of disability . . . ."  In construing this provision, I give its words their plain and ordinary meaning.  Gillespie v. Equifax Info. Servs., L.L.C., 484 F.3d 938, 941 (7th Cir. 2007).  The plain and ordinary meaning of the above language is that a court in a disability discrimination case can employ any of the remedies provided in § 2000e-5.  Under § 2000e-5, a court may award attorneys' fees and costs in mixed-motive cases.  Thus, § 12117(a) authorizes me to grant attorneys' fees and costs in the present case.

The legislative history of both the ADA and the 1991 amendments to the Civil Rights Act of 1964 also support this conclusion.  The House Report with respect to the ADA states:

> the powers, remedies and procedures available to persons discriminated against based on disability shall be the same as, and parallel to, the powers, remedies and procedures available to persons discriminated against based on race, color, religion, sex or national origin.  Thus, if the powers, remedies and procedures change in title VII . . . they will change identically under the ADA for persons with disabilities.

H.R. Rep. No. 102-485, pt. III, at 48 (1990), reprinted in 1990 U.S.C.C.A.N. 445, 471.  Further, Congress rejected an amendment to the ADA that would have incorporated the relevant provision of Title VII verbatim, and thus frozen the language of the provision as of 1990.  Instead, it cross-referenced the provision numerically, thus manifesting its intent that "the remedies of title VII, currently and as amended in the future, will be applicable to persons with disabilities."  Id. (emphasis added).  The House Report with respect to the Civil Rights Act of 1991 not only states that mixed-motive cases involving disability under the ADA should be interpreted consistent with 42 U.S.C. § 2000e-2(m), but also notes:

> [c]ertain sections of Title VII are explicitly cross-referenced in [42 U.S.C. § 12117(a)] of the ADA, to ensure that persons with disabilities have the same

3

powers, remedies and procedures as under Title VII. This would include having the same remedies . . . as Title VII, as amended by this Act, and by any future amendment.

H.R. Rep. 102-40, pt. II, at *4 (1991), reprinted in 1991 U.S.C.C.A.N. 549. Thus, Congress intended the amendments to the Civil Rights Act, including § 2000e-5(g)(2)(B)(i), to apply in cases brought under Title I of the ADA.

Applying § 2000e-5(g)(2)(B)(i) to ADA mixed-motive cases is not inconsistent with the general attorneys' fees provision in the statute, § 12205. Title VII itself contains two provisions regarding attorneys' fees, § 2000e-5(g)(2)(B)(i) and § 2000e-5(k), the latter of which, like § 12205, authorizes fee awards to a "prevailing party." In the 1991 amendments to Title VII, Congress added subsection (g)(2)(B)(i) in response to Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), in which the Supreme Court allowed defendants in mixed-motive cases to escape responsibility entirely. Subsection (g)(2)(B) applies only to mixed-motive cases – a narrow subset of employment discrimination cases – and the general attorneys' fees provision governs other cases. See HCSC-Laundry v. United States, 450 U.S. 1, 6 (1981) (stating that 'it is a basic principle of statutory construction that a specific statute . . . controls over a general provision . . . , particularly when the two are interrelated and closely positioned.") (citing Bulova Watch Co. v. United States, 365 U.S. 753, 761 (1961).)

Thus, I turn to whether I should award fees and costs to plaintiff. Section 2000e-5(g)(2)(B)(i) grants me discretion to award fees. Akrabawi v. Carnes Co., 152 F.3d 688, 696 (7th Cir. 1998); Sheppard v. Riverview Nursing Ctr., Inc., 88 F.3d 1332, 1336 (4th Cir. 1996); Gudenkauf v. Stauffer Commc'ns, 158 F.3d 1074, 1080 (10th Cir. 1988). This discretion is broad, and it includes the discretion to reduce a request for fees and costs

4

across the board.  See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); see also Gudenkauf, 158 F.3d at 1085 (stating that "[a]ll mixed motive claims, like all other claims of discrimination, are not created equal and not every proven mixed-motive claim warrants an award based on the full extent of attorney time devoted to it").  In exercising my discretion to award fees and/or reduce a fee request, I consider a number of factors.  First, I keep in mind that in enacting § 2000e-5(g)(2)(B)(i) and (m), Congress manifested an intent to encourage attorneys to represent plaintiffs in employment discrimination cases, including cases in which factfinders might find mixed motives.  I also consider whether the lawsuit served a public purpose aside from combating discrimination, whether the plaintiff received declaratory or injunctive relief and, if so, for what reason and to what extent, whether the evidence indicated an unwarranted animus on the part of the defendant and the nature of the plaintiff's conduct.  Akrabawi, 152 F.3d at 696.

Based on the above factors, I conclude that plaintiff is entitled to an award of some fees and costs.  By bringing the action, plaintiff's attorneys served the public purpose of discouraging discrimination in employment.  Further, the fact that the jury found that defendant acted out of a discriminatory motive indicates that the suit had some merit.  Plaintiff also obtained some, although minimal, non-monetary relief.  Additionally, unlike in Akrabawi, plaintiff committed no misconduct.  However, plaintiff is entitled to much less than the amount she requests – an amount reflecting the total number of hours her attorneys spent litigating the case, plus all of the costs.  The case is at the minimum end of the public purpose spectrum in mixed-motive cases, which by definition always establish at least one instance of unlawful conduct.  The evidence disclosed no pattern of disability

5

discrimination on defendant's part nor did it suggest any unwarranted animus by defendant toward plaintiff. Finally, as noted, plaintiff received minimal non-monetary relief.

In determining an appropriate fee award, I start with the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Hensley, 461 U.S. at 433.[2] Plaintiff requests an award of $162,180 representing the work of two lawyers and a paralegal. The billing rates are generally reasonable. I will deduct $6,187.50 or about one-third of the attorney time spent at the administrative level because such time involved work on non-mixed-motive claims that plaintiff could not also use at trial. I will also deduct $1,625.00 for what appears to be a duplicate billing entry of 6.5 hours on January 30, 2008.[3] I will reduce the resulting figure of $154,367.50 by five percent to account for what appears to be billing at too high a rate for administrative and clerical tasks, such as filing, copying, and organizing, which cannot be itemized because of the use of block billing.[4] I

---

[2]Hensley involved a fee-shifting statute that called for an award of "reasonable" attorneys fees to a prevailing party. While § 2000e-5(g)(2)(B) does not contain the word "reasonable," awards under the statute obviously cannot be unreasonable. See Gudenkauf, 158 F.3d at 1080 n.4. Thus, Hensley provides a useful framework for calculating an appropriate fee award.

[3]Plaintiff has already subtracted the amounts of other duplicative entries.

[4]I do not reduce plaintiff's request solely because of block billing. See Farfaras v. Citizens Bank and Trust, 433 F.3d 558, 569 (7th Cir. 2006) ("Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice."). While block bills can sometimes be too vague to support an award, in the present case most of the billing descriptions are specific enough to assess the reasonableness of plaintiff's request, and any ambiguity can be addressed through a percentage reduction, as with the 5% reduction for excessive billing for administrative tasks.

6

find no other faults with the details of plaintiff's attorneys' bills.[5]  Thus, the lodestar fee amount is $146,649.13.

As to costs, plaintiff requests $8,190.91.  I will deduct $140.00 for the costs of DVD copies of the videotaped depositions, which plaintiff has not shown to have been necessary, $4.30 and $7.98 for duplicative entries, and charges of $218.60, $346.83, and $19.80 associated with demonstrative evidence, which did not comply with Civil Local Rule 54.2(e).  Further, I will deduct $811.99 for postage, messenger services, parking, consulting fees, and office supplies as I am aware of no statutory authority for including these items as taxable costs.  See Cefalu v. Village of Elk Grove, 211 F.3d 416, 427 (7th Cir. 2000); cf. 28 U.S.C. § 1920.  With these deductions, plaintiff's costs are $6,641.41, bringing the total amount of fees and costs to $153,290.54.

However, as previously discussed, I will exercise my discretion to reduce the plaintiff's request based on the "results obtained," Hensley, 461 U.S. at 434, and the factors relevant to fee awards in mixed-motive cases.  See Sheppard, 88 F.3d at 1336; see also Akrabawi, 152 F.3d at 696; Pilgrim's Pride, 2007 WL 2570219, at *8.  Although plaintiff's attorneys performed a public service by bringing the case, and plaintiff was a long-standing employee who engaged in no misconduct, plaintiff nevertheless obtained minimal tangible relief.  And, as indicated, defendant did not engage in a pattern of discrimination or display any inappropriate animus toward plaintiff.  Therefore, I will reduce

---

[5]I reject defendant's contentions that plaintiff's attorneys spent too much time on the summary judgment briefs and that Attorney Scott's hours should be reduced.  As to summary judgment, some of the factual issues were complex as, for example, those involving production statistics. And while Attorney Scott did not examine witnesses at the trial, he helped to formulate trial strategy, to prepare witnesses and perform other essential work.

the above amount by eighty percent across the board and award plaintiff fees and costs in the amount of $30,658.11.

Therefore,

IT IS ORDERED that plaintiff's motion for judgment is GRANTED to the extent discussed herein.

IT IS FURTHER ORDERED that defendant's motion for judgment is DENIED.

IT IS FURTHER ORDERED that the clerk of court is directed to enter judgment accordingly.

IT IS FURTHER ORDERED that defendant shall place a copy of the judgment in plaintiff's personnel file.

IT IS FURTHER ORDERED that plaintiff's motion for attorneys fees is GRANTED to the extent discussed herein.

FINALLY, IT IS ORDERED that plaintiff is entitled to an award of attorneys fees and costs in the amount of $30,658.11.

Dated at Milwaukee, Wisconsin this 23 day of October, 2008.


_____
/s
LYNN ADELMAN
District Judge

8